UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

RICHARD RICHARDSON,

               Plaintiff,

-against-

SERGEANT LYNDON PROVIDENCE, Shield No. 19061, and POLICE OFFICER JASWANT DYAL, Shield No. 13885,

               Defendants.
------------------------------------------------------------------X

09-CV-4647 (ARR) (LB)

NOT FOR PRINT OR
ELECTRONIC
PUBLICATION

OPINION & ORDER

ROSS, United States District Judge:

Richard Richardson brings this action pursuant to 42 U.S.C. § 1983 against Police Officers Lyndon Providence and Jaswant Dyal of the New York City Police Department ("NYPD"). Plaintiff seeks to hold defendants liable for violations of his constitutional rights during an incident in the Jay Street subway station in Brooklyn on October 14, 2009. Now before the court is defendants' motion for summary judgment. For the reasons explained below, the motion is granted in part and denied in part.

## I. BACKGROUND

The following facts are drawn primarily from plaintiff's deposition testimony. See Deposition of Richard Richardson, Dec. 21, 2010 ("Pl. Dep."), annexed as Ex. B to Declaration of Lisa Richardson, dated Feb. 23, 2011 ("L. Richardson Decl."). The facts are undisputed except as indicated. Defendants have not submitted affidavits in support of their motion.

Plaintiff is a disabled, homeless man. Pl. Dep. at 18, 24. At the time of the incident, on October 14, 2009, he was 53 years old. Id. at 15. That afternoon, he entered the Jay Street subway station at around 1:00 p.m. Id. at 34. He didn't have any money left on his half-fare

1

Metrocard, so he sought out a police officer to ask permission to board the train without payment. Id. at 37. At the Jay Street station, plaintiff saw the two defendants in this action standing beyond the turnstiles, and he called out to them. Id. at 35, 42. Officer Dyal responded by waving plaintiff through the gate. Id. at 36. Plaintiff entered, explained his situation to Officer Dyal, and asked to be permitted onto the train. Id. at 38. Officer Dyal refused. Id. When plaintiff asked for an explanation, Officer Dyal responded, "[B]ecause I'm the boss and I say so." Id. Then, observing the single stripe of Dyal's sleeve, plaintiff said, "[Y]ou only got five years on the job. . . . I'm going to find an officer who is going to let me on." Id.

Then, "out of nowhere," Officer Providence grabbed plaintiff's jacket, pushed him up against the wall, and began searching him. Id. at 40. Plaintiff struggled and tried to break loose, but Officer Providence seized plaintiff's left hand by the finger and threw it behind plaintiff's back. Id. at 40, 43, 45. Officer Providence told plaintiff to put his other hand behind his back, plaintiff complied, and Officer Providence tightened a white plastic restrainer around plaintiff's hands. Id. at 45-46. He told plaintiff to face the wall. Id. at 40, 45. Then he pushed plaintiff against the wall and told him to stand there. Id. at 47. Officer Dyal appeared to be shocked by Officer Providence's conduct, but he did not intervene. Id. at 40-41.

Until 2:30 p.m. plaintiff stood facing the wall while defendants were "talking, just joking around." Id. at 47-48. Then, after about an hour and half, Providence cut the restrainer off plaintiff's hands and said to him, "[A]sshole[,] [d]o you feel like doing five years standing up in that corner[?]" Id. at 48-49. Then Providence gave plaintiff a notice of violation to the Transit Adjudication Bureau (the "TAB") for entering the subway without paying and let him go. Id. at 49-51; Transit Summons No. 102462764 ("Transit Summons"), annexed as Ex. C to L. Richardson Decl.

Plaintiff appeared at a TAB hearing in order to contest the violation, but the hearing officer sustained the violation and ordered plaintiff to pay a fine. Pl. Dep. 52. Plaintiff didn't take any further action on the violation and has not paid the fine. Id. at 52-53. The fine was consequently reduced to a judgment and forwarded to the Sheriff's Office for execution. See id. at 52; Sheriff's Notice of Impending Levy ("Sheriff's Notice"), annexed as Ex. D to L. Richardson Decl.

In this action, plaintiff alleges that his finger was injured when Officer Providence twisted it behind his back. Pl. Dep. at 50-51, 67. Plaintiff remembers seeking treatment at the Brooklyn Hospital emergency room on the day of the incident, October 14, 2009, but his hospital records record a visit on the following day, October 15, 2009. Compare Pl. Dep. at 55-56, with Brooklyn Hospital Center Medical Records ("Certified Medical Records"), annexed as Ex. A to Reply Declaration of Lisa Richardson, dated Apr. 6, 2011 ("L. Richardson Reply Decl."). Plaintiff was diagnosed with a sprain of his finger. Certified Medical Records; Pl. Dep. at 57. Diagnostic imaging did not reveal any dislocation or fracture; although an MRI made about ten months later could not exclude the possibility of a small subchondral fracture, the reviewing doctor's impression was that it more likely reflected osteoarthrosis. Certified Medical Records; Bensonhurst MRI Report, dated Aug. 24, 2010 ("MRI Report"), annexed as Ex. F to L. Richardson Decl.; Pl. Dep. at 57, 62-63. Plaintiff's medical treatment for this injury has included physical therapy; steroid shots were prescribed but plaintiff discontinued them because of their side effects. Certified Medical Records; Pl. Dep. at 59-61.

## II. DISCUSSION

The court liberally construes plaintiff's pro se complaint to assert § 1983 claims for false arrest, malicious prosecution, excessive force, unreasonable detention, and failure to intervene.

Plaintiff may not assert pendent state-law claims because he has not filed a notice of claim as required by New York law.[1] Defendants have moved for summary judgment against plaintiff's § 1983 claims on the bases that (1) there was probable cause to arrest plaintiff, (2) the civil TAB proceeding did not terminate in plaintiff's favor, (3) Officer Providence's use of force against plaintiff was objectively reasonable, and (4) both defendants are entitled to qualified immunity. The court concludes that defendants are entitled to summary judgment on plaintiff's claims for false arrest, malicious prosecution, and excessive force. Although defendants have moved against the complaint in its entirety, their moving papers do not address plaintiff's claims for unreasonable detention and failure to intervene. Summary judgment is therefore denied as to these claims, without prejudice to defendants' renewal of their motion within 45 days.

A.  **Standard of Review**

Under Rule 56(c) of the Federal Rules of Civil Procedure, a moving party is entitled to summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby Inc., 477 U.S. 242, 250 (1986). "'While genuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party . . . materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law.'" McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (internal quotation marks omitted)). In determining whether there is a genuine issue of material fact, "the

---

[1] See Pl. Dep. at 9-10; N.Y. Gen. Mun. §§ 50-e, 50-i. Filing a notice of claim is a mandatory condition precedent to suit against New York City and its employees, and failure to comply with this condition is grounds for dismissing New York state-law claims in federal court. Cantave v. New York City Police Officers, No. 09-CV-2226, 2011 WL 1239895, at *12 (E.D.N.Y. Mar. 28, 2011).

district court is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." Weyant v. Okst, 101 F.3d 845, 854 (2d Cir. 1996) (citing Anderson, 477 U.S. at 255). "[T]he moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case." Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir. 1994); Celotex, 477 U.S. at 322 ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.").

**B.    False Arrest**

A § 1983 claim for false arrest requires proof of the same four elements as a claim for false arrest under New York law: (1) the defendant intentionally confined plaintiff, (2) plaintiff was conscious of the confinement, (3) plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged. See Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003); Harris v. County of Nassau, 581 F.Supp.2d 351, 354-55 (E.D.N.Y. 2008); Broughton v. State, 37 N.Y.2d 451, 456 (1975). If probable cause exists at the time of arrest, the confinement is privileged. Jocks, 316 F.3d at 135; Martinez v. City of New York, 340 Fed. Appx. 700, 701 (2d Cir. 2009). Thus, the existence of probable cause constitutes a complete defense to a false-arrest claim. Covington v. City of New York, 171 F.3d 117, 122 (2d Cir. 1999). In this action, because defendants had probable cause to arrest plaintiff as a matter of law, the court grants summary judgment in their favor.

At the time of plaintiff's arrest, Providence wrote him a summons for violating the New York City Transit Authority's Rules of Conduct (the "Rules") by entering the station without paying. See 21 N.Y.C.R.R. § 1050.4(a) ("No person shall use or enter upon the facilities or conveyances of the authority, for any purpose, without the payment of the fare or tender of other valid fare media . . . ."). Persons violating the Rules are subject to either:

> (a) criminal prosecution in the criminal court of the City of New York, which court may impose a fine not to exceed $25 or a term of imprisonment for not longer than 10 days, or both; or
>
> (b) civil penalties imposed by the transit adjudication bureau in an amount not to exceed $100 per violation (exclusive of interest or costs assessed thereon).

§ 1050.10; see also N.Y. Pub. Auth. Law § 1209-a(3) (giving the TAB "non-exclusive jurisdiction" over violations of the Rules). The police officer citing the violation has complete discretion concerning whether to issue a citation to the criminal court or a notice of violation to the TAB. New York Civil Liberties Union v. New Your City Transit Auth., No. 10-372-CV, 2011 WL 2852412, at *2, 12 (2d Cir. July 20, 2011) ("NYCLU"); People v. Mattocks, 12 N.Y.3d 326, 334 n.2 (2009) (noting broad charging discretion in connection with turnstile jumping). In this case, Officer Providence wrote plaintiff a notice of violation to the TAB. Although a TAB notice is not fully equivalent to a criminal citation, see Hernandez v. City of New York, No. 00-CV-9507, 2004 WL 2624675, at *5 (S.D.N.Y. Nov. 18, 2004) (rejecting the contention that the plaintiff's voluntary payment of a civil fine to the TAB was conclusive evidence of probable cause in the manner of a criminal guilty plea), the court concludes that the TAB adjudication of plaintiff's violation is entitled to preclusive effect in the present § 1983 action.

"[W]hen a state agency acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, . . . federal

6

courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." Univ. of Tenn. v. Elliott, 478 U.S. 788, 799 (1986) (internal quotation marks and citation omitted); accord Rodriguez v. City of New York, 41 Fed. Appx. 486, 488-89 (2d Cir. 2002) (finding that an agency determination established probable cause, barring the plaintiff's § 1983 claim for false arrest). Under New York law, the doctrine of collateral estoppel is applicable to give preclusive effect to the final, quasi-judicial determinations of administrative agencies "when rendered pursuant to the adjudicatory authority of an agency to decide cases brought before its tribunals employing procedures substantially similar to those used in a court of law." Ryan v. New York Telephone Co., 62 N.Y.2d 494, 499-500 (1984); see also Rodriquez, 41 Fed. Appx. at 488. "Of course, the issue must have been material to the first action or proceeding and essential to the decision rendered therein, and it must be the point actually to be determined in the second action or proceeding such that a different judgment in the second would destroy or impair rights or interests established by the first." Ryan, 62 N.Y.2d at 500 (internal quotations marks and citations omitted); see also Rodriquez 41 Fed. Appx. at 488. "In the application of collateral estoppel with respect to administrative determinations, the burden rests upon the proponent of collateral estoppel to demonstrate the identicality and decisiveness of the issue, while the burden rests upon the opponent to establish the absence of a full and fair opportunity to litigate the issue in prior action or proceeding." Ryan, 62 N.Y.2d at 501; see also Cortez v. City of New York, No. 99-CV-4304, 2001 WL 410092, at *6 (S.D.N.Y. Apr. 20, 2001).

As the Second Circuit recently observed, "the TAB acts as an adjudicatory body [and] operates under procedures modeled on those of courts." NYCLU, 2011 WL 2852412, at *11 (holding that the First Amendment guarantees a presumptive right of public access to TAB

hearings). "When a neutral adjudicator determines whether public transit users have violated a Rule, that determination has the force of law . . . ." Id. Thus, the TAB hearing at which plaintiff's summons was sustained was a quasi-judicial determination within TAB's adjudicatory authority, and its money judgment against him is enforceable "without court proceedings, in the same manner as the enforcement of money judgments in civil actions." See id. at *2 (quoting N.Y. Pub. Auth. Law § 1209-a(4)(e)). Its determination that plaintiff violated the Rules by walking through the gate at the Jay Street station without paying the fare necessarily entails that Providence had probable cause to believe plaintiff violated the Rules. Finally, plaintiff has not demonstrated that he was not given a full and fair opportunity to litigate the issue. Although plaintiff intimates that his hearing was unfair because the TAB hearing officers, like the police, work for the City, Pl. Dep. at 52, the court notes that he could have appealed the decision to an internal appeals board and, from there, to state court, see NYCLU, 2011 WL 2852412, at *2; N.Y. Pub. Auth. Law § 1209-a(8), but he has not done so. Therefore, plaintiff may not assert in this action that defendants lacked probable cause.

Because defendants had probable cause to believe plaintiff violated § 1050.4(a) of the Rules, they were entitled to arrest him. See Atwater v. Lago Vista, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."). Therefore, plaintiff's false-arrest claim fails. See Sands v. City of New York, No. 04-CV-5275, 2006 WL 2850613, at *4-5 (E.D.N.Y. Oct. 3, 2006) (dismissing false-arrest claim based on custodial arrest for littering).

C.  **Malicious Prosecution**

The existence of probable cause also bars plaintiff's § 1983 claim for malicious prosecution. See Manganiello v. City of New York, 612 F.3d 149, 161 (2d Cir. 2010); Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003). Under New York law, a malicious prosecution claim has four elements: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." Manganiello, 612 F.3d at 161 (internal quotation marks omitted); Broughton v. State, 37 N.Y.2d 451, 457 (1975). In order to prevail on a § 1983 claim for malicious prosecution, a plaintiff must also establish (5) a sufficient post-arraignment restraint on his liberty to implicate his Fourth Amendment rights. Rohman v. New York City Transit Auth., 215 F.3d 208, 215 (2d Cir. 2000); Manganiello, 612 F.3d at 160-61. Thus, the existence of probable cause negates an essential element of plaintiff's claim. In addition, the court notes that plaintiff cannot establish other elements of this cause of action because no criminal action was commenced against him, the civil TAB proceeding did not terminate in his favor, and there was no post-arraignment deprivation of his liberty.

D.  **Excessive Force**

"In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." Graham v. Connor, 490 U.S. 386, 394 (1989) (identifying the Fourth, Eighth, and Fourteenth Amendments as potential bases for an excessive force claim in the appropriate circumstances). "Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the

protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." Id.; see Lemmo v. McKoy, No. 08-CV-4264, 2011 WL 843974, at *4 (E.D.N.Y. Mar. 8, 2011) (applying Fourth Amendment standard to the use of force in a police precinct after the plaintiff had been arrested but before he was arraigned); see also Powell v. Gardner, 891 F.2d 1039, 1044 (2d Cir. 1989) ("We think the Fourth Amendment standard probably should be applied at least to the period prior to the time when the person arrested is arraigned or formally charged, and remains in the custody (sole or joint) of the arresting officer."). Allegations of excessive force occurring after arraignment but before conviction are governed by the Fourteenth Amendment; after conviction the Eighth Amendment applies. Lemmo, 2011 WL 843974, at *4.[2]

The Fourth Amendment standard, applicable to the present case, is purely objective: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham, 490 U.S. at 397 ("An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional."); see Nimely v. City of New York, 414 F.3d 381, 390 (2d Cir. 2005). In Graham, the Supreme Court provided guidance on how to apply

---

[2] The Eighth and Fourteenth Amendment tests that apply to the claims of pre-trial detainees and sentenced convicts are essentially the same. United States v. Walsh, 194 F.3d 37, 48 (2d Cir. 1999) (citing Hudson v. McMillian, 503 U.S. 1 (1992)). This test includes both a subjective component, focusing on the defendant's motive for his conduct, and an objective component, focusing on the conduct's effect on the plaintiff. Wright v. Goord, 554 F.3d 255, 268 (2d Cir. 2009) (citing Hudson, 503 U.S. at 7-8). The subjective component turns on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 7. The objective component turns on whether "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation" in light of "contemporary standards of decency." Id. at 8 (internal quotation marks and citations omitted). Although a prison official's use of force to cause harm maliciously and sadistically will always violate contemporary standards of decency, whether or not a significant injury is evident, de minimis uses of physical force do not constitute constitutional violations, "provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. at 9-10 (internal quotation marks and citations omitted).

the Fourth Amendment standard to claims that police officers used excessive force in the course of an arrest or other seizure:

> Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

490 U.S. at 396 (internal quotations and citations omitted). Graham further teaches that "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.") (internal quotation marks and citation omitted). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Id.

Applying the Graham test to the present case, it is beyond dispute that Officer Providence was entitled to use "some degree of physical coercion or threat thereof" to effect plaintiff's lawful arrest and to search him. See id. Plaintiff admits that he struggled against Officer Providence, who then twisted plaintiff's finger in order to handcuff him:

> When he grabbed my jacket with one hand I struggled. That's when he grabbed my left hand, twist [sic] the finger and threw it behind my back. Then he pulled a white restrainer from out of his belt from his belt. He told me to put my hand behind my back and tightened the restrainer on and he told me to face the wall.

11

Pl. Dep. at 45. Defendants submit that plaintiff's struggle entitled Officer Providence to use this amount of force. The court agrees. Even if plaintiff sustained a small fracture or osteoarthrosis from his encounter with Officer Providence,[3] the court concludes that, under the circumstances, the brief twisting of plaintiff's finger to control his arm for handcuffing cannot be deemed unreasonable or "excessive" as a matter of law. See Keene v. Schneider, 350 Fed. Appx. 595, 597 (2d Cir. 2009) (reversing the district court's denial of defendants' motion for summary judgment on the ground of qualified immunity where force was necessary overcome the plaintiff's resistance to being handcuffed and the use of force stopped immediately after the handcuffs were secured); Sassower v. City of White Plains, No. 89-CV-1267, 1995 WL 222206, at *6-7 (S.D.N.Y. Apr. 13, 1995) (granting summary judgment to police officers on the plaintiff's excessive force claims where the plaintiff resisted arrest, and in the course of arresting

---

[3] Both parties devote considerable discussion to the extent of plaintiff's injury. While some district courts have borrowed from the Eighth Amendment test for excessive force against sentenced convicts to dismiss claims in which an arrestee suffers only de minimis injuries, see, e.g., Smith v. City of New York, No. 04-CV-3286, 2010 WL 3397683, at *10 (S.D.N.Y. Aug. 27, 2010) (characterizing short-term pain, swelling, and bruising as de minimis), the Second Circuit has held that even minor injuries, including scrapes and bruises, can support an excessive-force claim, Maxwell v. City of New York, 380 F.3d 106, 109-10 (2d Cir. 2004) (reversing the district court's entry of summary of judgment against a plaintiff who had suffered only "minor scrapes, bumps or bruises [that] potentially could occur, often unintended, during any arrest," pain, and post-concussive syndrome); Robinson v. Via, 821 F.2d 913, 923-24 (2d Cir. 1987) (allowing a plaintiff's claim to survive summary judgment where a police officer pushed her against the inside of the door of a car, "yanked" her out, threw her up against the fender, and twisted her arm behind her back, causing only bruising for which she did not seek medical treatment). See generally Lemmo, 2011 WL 843974, at *5-6. In addition, the Second Circuit has approved of the award of nominal damages for the use of excessive force in violation of the Fourth Amendment where no compensable injury can be proven. Amato v. City of Saratoga Springs, 170 F.3d 311, 317 (2d Cir. 1999) ("While the main purpose of a § 1983 damages award is to compensate individuals for injuries caused by the deprivation of constitutional rights, a litigant is entitled to an award of nominal damages upon proof of a violation of a substantive constitutional right even in the absence of actual compensable injury."). Thus, the extent of plaintiff's injury is not dispositive of his Fourth Amendment excessive force claim. See Pierre-Antoine v. City of New York, No. 04-CV-6987, 2006 WL 1292076, at *5 (S.D.N.Y. May 9, 2006) ("[T]he medical evidence . . . does not reveal any severe injury; such evidence does not, however, entitle [the defendant] to judgment as a matter of law."); Lemmo, 2011 WL 843974, at *7 (denying summary judgment where the plaintiff sustained minor injuries when officers "cranked" his thumbs while his hands were handcuffed behind his back). Nevertheless, it is "probative of the amount and type of the force actually used by the arresting officers, and that in turn is likely to reflect on the reasonableness of that force." See Zhao v. City of New York, 656 F. Supp. 2d 375, 390 (S.D.N.Y. 2009).

her, the officers "grabbed her, pulled her hands behind her back and handcuffed her in an extremely painful manner," despite the plaintiff's "weak condition").

In the alternative, Officer Providence is entitled to qualified immunity for his conduct. Police officers are entitled to qualified immunity for their actions unless it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted. Stephenson v. Doe, 332 F.3d 68, 77 (2d Cir. 2003); see also Loria v. Gorman, 306 F.3d 1271, 1282 (2d Cir. 2002) ("Said differently, if the officer's conduct violated a right, we analyze the objective reasonableness of the officer's belief in the lawfulness of his actions."). "[E]ven officers who are found to have used excessive force may be entitled through the qualified immunity doctrine to an extra layer of protection 'from the sometimes hazy border between excessive and acceptable force.'" Stephenson, 332 F.3d at 77 (quoting Saucier v. Katz, 533 U.S. 194, 206 (2001)). In light of the court's conclusion that the Officer Providence did not use excessive force against plaintiff, the court necessarily also holds that he is entitled to qualified immunity with respect to this conduct. Cf. Lemmo, 2011 WL 843974, at *8 ("In Fourth Amendment excessive force cases, . . . the qualified immunity and excessive force analyses 'converge on one question: [w]hether in the particular circumstances faced by the officer, a reasonable officer would believe that the force employed would be lawful.'") (quoting Cowan v. Breen, 352 F.3d 756, 764 n.7 (2d Cir. 2003)).

E.  **Unreasonable Detention**

The Graham test also applies to plaintiff's claim for unreasonable detention under the Fourth Amendment. See Bryant v. City of New York, 404 F.3d 128 (2d Cir. 2005) (applying the Graham test to determine the reasonableness of pre-arraignment detentions following warrantless arrests). A detention of more than 48 hours before a probable-cause hearing is presumptively

unreasonable. County of Riverside v. McLaughlin, 500 U.S. 44, 56 (1991). A detention of fewer than 48 hours may also be unreasonable if it is unreasonably prolonged, for example, "for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake." Id.; Bryant, 404 F.3d at 137; cf. Lemmo, 2011 WL 843974, at *6-7 (observing that although a police officer's intentions are not elemental to the Graham test of reasonableness, the intentional, gratuitous use of force is usually unreasonable). Although plaintiff's hour-and-a-half detention did not approach the 48-hour mark, he alleges that defendants detained him capriciously and arbitrarily. Thus, he has stated a claim for unreasonable detention.

F.   **Failure to Intervene**

Although plaintiff alleges that only Officer Providence physically detained him, he nonetheless states a claim against Officer Dyal for failure to intervene. "A law enforcement officer has an affirmative duty to intercede on behalf of a citizen whose constitutional rights are being violated in his presence by other officers." O'Neill v. Krzeminski, 839 F.2d 9, 11 (2d Cir. 1988). An officer who fails to intercede is therefore liable for the preventable harm caused by the actions of other officers where he or she observes or has reason to know that those other officers are violating a person's constitutional rights. Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994). However, liability may attach only when, "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." Jean-Laurent v. Wilkinson, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) (citing O'Neill v. Krzeminski, 839 F.2d 9, 11-12 (2d Cir. 1988)); Cantave, 2011 WL 1239895, at *8. In the present case, plaintiff alleges the elements of this cause of action: Officer

Dyal knew that Officer Providence was violating plaintiff's constitutional rights by unreasonably detaining him but took no action to prevent or stop the violation, despite having a reasonable opportunity to do so.

## III. CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment is granted in part and denied in part. Plaintiff's claims for false arrest, malicious prosecution, and excessive force are dismissed. His claims for unreasonable detention and failure to intervene may proceed to trial unless defendants renew their motion for summary judgment within 45 days.

SO ORDERED.

/Signed by Judge Ross/
Allyne R. Ross
United States District Judge

Dated: August 22, 2011
Brooklyn, New York

SERVICE LIST

<pre>
Pro Se Plaintiff
Richard Richardson
Cadman Plaza Post Office
P.O. Box 22886
Brooklyn, NY 11202-2886
</pre>